Dana B. Parker
**K&L GATES LLP**
One Newark Center, 10th Floor
Newark, New Jersey 07102
Tel: (973) 848-4000
Fax: (973) 848-4001
dana.parker@klgates.com
*Attorneys for Plaintiff SWAROVSKI OPTIK North America Limited*

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SWAROVSKI OPTIK NORTH AMERICA LIMITED,<br><br>          Plaintiff,<br><br>v.<br><br>IBUY GROUP LLC f/k/a VALOR GROUP LLC; and IBUY DISTRIBUTION LLC f/k/a F & E TRADING LLC d/b/a 6TH AVE ELECTRONICS,<br><br>          Defendants. | **C.A. NO. 3:23-cv-01210-GC-TJB**<br><br>**DOCUMENT FILED ELECTRONICALLY**<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |

Plaintiff SWAROVSKI OPTIK North America Limited ("SWAROVSKI OPTIK"), by and through undersigned counsel, respectfully submits this Opposition to the Motion to Dismiss (ECF No. 35) SWAROVSKI OPTIK's Amended Complaint[1] filed by Defendants iBuy Group LLC and iBuy Distribution LLC ("Defendants"). For the reasons set forth below, this Court should deny Defendants' Motion to Dismiss (the "Motion").

---

[1] On May 31, 2023, SWAROVSKI OPTIK filed an Amended Complaint (ECF No. 23), which is the operative complaint in this matter. SWAROVSKI OPTIK's Amended Complaint is referred to herein as the "Complaint."

## INTRODUCTION

Defendants' Motion throws everything at the wall to see what sticks in an attempt to avoid the allegations in SWAROVSKI OPTIK's well-pleaded Complaint. Defendant's Motion is premised upon both a misreading of SWAROVSKI OPTIK's Complaint, as well as a misapplication of relevant trademark law. Repeatedly, Defendants ignore SWAROVSKI OPTIK's well-pleaded allegations in an attempt to drum up controversy and stall this litigation. For the reasons set forth herein, each of Defendants' arguments fails out of the gate.

*First*, Defendants spend much of their brief to contest SWAROVSKI OPTIK's standing to bring a claim under Section 32 of the Lanham Act, 15 U.S.C. § 1114. This argument is simply irrelevant, as SWAROVSKI OPTIK has made abundantly clear—and even moreso through its Amended Complaint—that its claim arises under 15 U.S.C. § 1125, *not* 15 U.S.C. § 1114. Because Section 43 of the Lanham Act does not require trademark ownership, any discussion of standing or ownership of the SWAROVSKI OPTIK Marks is immaterial to this dispute.

*Second*, Defendants contend that the first sale doctrine "protects Defendants' conduct." *Not so*. As a preliminary matter, the first sale doctrine is an affirmative defense, presenting a core factual dispute, not ripe for adjudication on a motion to dismiss. Notwithstanding this, as *Defendants concede*, the first sale doctrine is inapplicable to "unauthorized gray goods" and the sale of non-genuine, materially different products. Defendants' contention that "there are no 'material differences'" at issue is false, as that is *precisely* alleged in the Complaint.

*Third*, Defendants' position that SWAROVSKI OPTIK "does not identify any advertisement that was false" simply ignores the more-than seven (7) pages of allegations in the Complaint recounting how Defendants falsely advertise "new" SWAROVSKI PRODUCTS designed and intended for resale into North American but fulfil orders with unwarranted products

of unknown foreign origin. At the motion to dismiss stage, these allegations must be taken as true, and are more than sufficient to establish a false advertising claim under the Lanham Act. To the extent Defendants contest the substance of these allegations, this argument is not proper at the motion to dismiss stage.

*Fourth*, and finally, Defendants' challenge to SWAROVSKI OPTIK's state law deceptive practices claim ignores applicable law. As courts in this Circuit expressly recognize, SWAROVSKI OPTIK's Lanham Act and state unfair competition claims are *not* duplicative. Further, Defendants' challenges to the sufficiency of this claim fail, as SWAROVSKI OPTIK has alleged the necessary elements, as discussed herein.

For the foregoing reasons, and as set forth more fully herein, Defendants' Motion is without merit and must be denied, as SWAROVSKI OPTIK's Complaint sets forth valid claims for (1) false advertising under Section 43 of the Lanham Act, 15 U.S.C. § 1125, and (2) deceptive trade practices under N.J.S.A. §§ 56:8-1, *et seq.*

## <u>FACTUAL BACKGROUND & PROCEDURAL HISTORY</u>

The facts alleged in SWAROVSKI OPTIK's Complaint are straightforward. The heart of this case boils down Defendants' false advertisement of SWAROVSKI OPTIK products to consumers in the United States through various online commerce sites, including, but not limited to, 6ave.com, iBuy.com, Amazon.com, eBay.com, and Walmart.com. Am. Compl. ¶ 2. Specifically:

1.  *First*, "Defendants are offering 'new' SWAROVSKI OPTIK Products designed and intended for resale to North America but fulfilling orders with non-genuine foreign products of unknown origin which are not manufactured by SWAROVSKI OPTIK." *Id.* ¶ 2; *see also id.* ¶ 34.

2.  *Second*, because the SWAROVSKI OPTIK North American Warranty is limited to SWAROVSKI OPTIK Products "imported by SWAROVSKI OPTIK North America and sold to a consumer by an Authorized U.S. or Canadian SWAROVSKI OPTIK North American Dealer," the products bearing the SWAROVSKI OPTIK Marks of

unknown foreign origin sold by Defendants are not covered by the SWAROVSKI OPTIK North American Warranty. *Id.* ¶ 35.

3. ***Third***, "the products bearing the SWAROVSKI OPTIK Marks of unknown foreign origin sold by Defendants have different product packaging and legal disclaimers than SWAROVSKI OPTIK Products sold by SWAROVSKI OPTIK." *Id.* ¶ 36.

Accordingly, SWAROVSKI OPTIK filed its initial complaint in this action on March 2, 2023. *See* ECF No. 1. Defendants requested a pre-motion conference regarding an anticipated motion to dismiss on May 11, 2023. *See* ECF No. 16. Before a ruling on the same, Defendants filed their motion to dismiss SWAROVSKI OPTIK's initial complaint the next day, on May 12, 2023. *See* ECF No. 19. On May 31, 2023, SWAROVSKI OPTIK filed an Amended Complaint, the operative pleading in this case. *See* ECF No. 23. Defendants again requested a pre-motion conference on an anticipated motion to dismiss. *See* ECF No. 26. On July 11, 2023, the Court allowed Defendants to file a motion to dismiss, setting the motion schedule. *See* ECF No. 33. Accordingly, Defendants filed the present Motion on August 11, 2023. *See* ECF No. 35. For the reasons set forth herein, this Court should deny Defendants' Motion.

## LEGAL STANDARD

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the… claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 US. 544, 555-56 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). In reviewing a motion to dismiss for failure to state a claim, "[a]ll allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (internal quotation marks omitted). Only if the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct" should a complaint be dismissed for failing to state a claim. *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009); *see also Skoorka v. Kean University*, C.A. No. 07-CV-1629, 2007 WL 2915087, at *1 (D.N.J. Oct. 4, 2007) (noting "Rule 12(b)(6) allows dismissal only in rare cases").

As set forth below, Defendants' arguments disregard the well-pled factual allegations in the Complaint. Defendants also misstate and misapply the law. For the reasons set forth herein, Defendants Motion should be dismissed.

## ARGUMENT & AUTHORITIES

### A. SWAROVSKI OPTIK Has Standing to Bring its Lanham Act Claim.

As a preliminary matter, any challenge to SWAROVSKI OPTIK's standing in this case is misguided, ignoring the clear, unambiguous allegations in the Complaint. To be sure, the ***only*** Lanham Act claim SWAROVSKI OPTIK brings in this case is under 15 U.S.C. § 1125(a). Defendants' Motion contends that SWAROVSKI OPTIK purports to bring a claim under 15 U.S.C. § 1114.  This is incorrect.  SWAROVSKI OPTIK's Count I specifically identifies that the cause of action is brought pursuant to 15 U.S.C. § 1125 ***only***.  SWAROVSKI OPTIK could not have made this clearer:  "This is a claim for federal trademark infringement ***under 15 U.S.C. § 1125(a)***."  Am. Compl., ¶ 67. Accordingly, any discussion of Section 32 of the Lanham Act is wholly irrelevant to this dispute.

While Defendants do not contest SWAROVSKI OPTIK's standing to bring its 15 U.S.C. § 1125(a) false advertising claim,[2] there can be no dispute that standing exists here, notwithstanding ownership of the SWAROVSKI OPTIK Marks. Again, SWAROVSKI OPTIK's trademark claim is for false advertising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), ***not*** Section 32 of the Lanham Act, 15 U.S.C. § 1114 (which can only be asserted by the

---

[2] *See* Motion, at 4 ("Defendants do not contest SWAROVSKI OPTIK N.A.'s standing to bring a false advertising claim under 15 U.S.C. § 1125(a)….").

owner or licensee of the trademark).  As set forth in the Complaint, Section 43(a) expressly extends

standing beyond the trademark owner:

> Standing is proper over SWAROVSKI OPTIK's trademark claims as 15 U.S.C. § 1125(a) specifically states that "[a]ny person who… uses in commerce any… false designation of origin, false or misleading description of fact, or false or misleading representation of fact… shall be liable *in a civil action by any person* who believes that he or she is or is likely to be damaged by such act."  15 U.S.C. § 1125(a) (emphasis added).  Unlike claims for trademark infringement under 15 U.S.C. § 1114, which specific language limits claims to "a civil action by the *[trademark] registrant*," claims under 15 U.S.C. § 1125(a) can be brought by non-trademark holders who claim to be injured by the alleged misconduct.  *See*, *e.g.*, *Holiday Inns, Inc. v. Trump*, 617 F. Supp. 1443, 1467 (D.N.J. 1985) ("Section 43(a) expressly extends standing beyond the trademark owner to 'any person who believes that he is or is likely to be damaged' by defendant's conduct."); *Mercedes-Benz USA, LLC v. ATX Grp., Inc.*, 2009 WL 2255727, at *9 (D.N.J. July 27, 2009) (finding that, unlike 15 U.S.C. § 1114 claims which are limited to trademark holders, any individual claiming harm has standing under 15 U.S.C. § 1125(a)).

Am. Compl., ¶ 9; *see also Murphy v. Provident Mut. Life Ins. Co.,* 756 F. Supp. 83, 86 (D. Conn.

1990) ("[T]he question of ownership is immaterial to standing under § 43(a), since standing may

lie with mere users of trademarks.").  The Supreme Court has reiterated this point, explaining that

the Lanham Act relies upon *competitors* as its enforcement mechanism for misleading advertising

and labeling.  *See POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 109 (2014) ("Competitors

who manufacture or distribute products have detailed knowledge regarding how consumers rely

upon certain sales and marketing strategies. Their awareness of unfair competition practices may

be far more immediate and accurate than that of agency rulemakers and regulators. Lanham Act

suits draw upon this market expertise by empowering private parties to sue competitors to protect

their interests on a case-by-case basis.").  Accordingly, where, as here, SWAROVSKI OPTIK's

sole Lanham Act claim is brought pursuant to Section 1125(a), which does *not* require trademark

ownership, there is no dispute as to standing in this case.

**B.  The First Sale Doctrine Does Not Apply to This Case**

Where, as here, SWAROVSKI OPTIK indisputably has standing to bring its Lanham Act false advertising claim, Defendants' principal defense is that "[t]rademark law's 'first sale doctrine' makes Defendants' conduct legal." Motion, at 1.  In relying upon the first sale doctrine, Defendants, once again, misapply trademark law and ignore the allegations in the Complaint.  The first sale doctrine is ***not*** applicable given the facts alleged in SWAROVSKI OPTIK's Complaint.

**i.   The First Sale Doctrine is a Fact-Intensive Affirmative Defense Not Properly Raised at a Motion to Dismiss**

As a preliminary matter, the first sale doctrine is an affirmative defense which cannot be adjudicated on a motion to dismiss. Courts routinely acknowledge that the first sale doctrine is axiomatically an affirmative defense. *See, e.g.*, *Steeplechase Arts & Prods., L.L.C. v. Wisdom Paths, Inc.*, C.A. No. CV2202031KMMAH, 2023 WL 416080 (D.N.J. Jan. 26, 2023) ("The 'first sale' doctrine is an affirmative defense to trademark infringement claims…."); *Maya Swimwear, Corp. v. Maya Swimwear, LLC*, 789 F. Supp. 2d 506, 514 (D. Del. 2011) (discussing "the affirmative defense of the first sale doctrine or 'trademark exhaustion'"). Moreover, "[t]he facts necessary to establish an affirmative defense must generally come from matters outside of the complaint. Thus, with some exceptions, affirmative defenses should be raised in responsive pleadings, not in pre-answer motions brought under Rule 12(b)." *Id.* at 512 (quoting *Worldcom, Inc. v. Graphnet, Inc.,* 343 F.3d 651, 657 (3d Cir. 2003)).

Categorically, in order for the first sale defense to apply (which it does not), there needs to be evidence in the record of the "first sale" of the products at issue.  No such evidence is present here.  Indeed, in order to avail themselves of the first sale defense, Defendants would need to present ***facts*** evidencing the chain of custody of the SWAROVSKI OPTIK products they sell—from their purchase all the way to a "authorized initial first sale" by the Plaintiff. *Iberia Foods*

*Corp. v. Romeo*, 150 F.3d 298, 301 n.4 (3d Cir. 1998); *see also Hotaling & Co., LLC v. Berry Sols. Inc.*, C.A. No. 20CV18718KSHCLW, 2022 WL 4550145, at *7 (D.N.J. Sept. 29, 2022) (quoting *Iberia*, 150 F.3d at 301 n.4).  No such facts exist in the present record.  In fact, at this stage, when the facts of the Complaint are taken as true, SWAROVSKI OPTIK has alleged that the products at issue are non-genuine of unknown origin bearing the SWAROVSKI OPTIK Marks.  *See*, *e.g.*, Am. Compl. ¶ 24.  Discovery in this could reveal that the products offered for sale and sold by Defendants are, for example, counterfeit, making the first sale doctrine wholly inapplicable.  *See Robinson v. Best Price Distributors, LLC*, C.A. No. 221CV06689RGKJCX, 2022 WL 4596593, at *1 (C.D. Cal. July 15, 2022) ("By definition, the first sale doctrine does not apply to the sale of counterfeit goods.").  The allegation in the Complaint that the products at issues are "non-genuine" is a death knell to Defendant's premature first sale defense argument.   For this reason alone, the Court need not engage in any fact-intensive analysis of the applicability of the first sale doctrine.

> ## ii. Defendants' Reliance on the First Sale Doctrine Ignores the Facts Alleged in this Case

Even if discovery shows that the products at issue can be traced back to SWAROVSKI OPTIK, Defendants' reliance upon the first sale doctrine would not apply given the allegations setting forth the differences between genuine products and the products sold by the Defendants.

The legal framework surrounding the first sale doctrine is well-established. The first sale doctrine provides that the resale of genuine trademarked products generally does not constitute trademark infringement.  *See Iberia*, 150 F.3d at 301 n.4 ("[A] trademark owner's authorized initial sale of its products into the stream of commerce extinguishes the trademark owner's rights to maintain control over who buys, sells, and uses the product in its authorized form."); *see also Hotaling & Co., LLC*, 2022 WL 1134851, at *7. **However**, as Defendants concede, the well-recognized "material differences" exception to the first sale doctrine clarifies that "[i]f the products

sold by the alleged infringer and the trademark owner contain identical marks ***but are materially different***, then 'the alleged infringer's goods are considered '***non-genuine***' and the sale of the goods constitutes infringement.'" *Id.* (quoting *Iberia*, 150 F.3d at 299) (emphasis added); *see also Otter Prod., LLC v. Triplenet Pricing Inc.*, 572 F. Supp. 3d 1066, 1074 (D. Colo. 2021) ("[A] product is not 'genuine,' and the first sale doctrine therefore does not apply, 'when [the] alleged infringer sells trademarked goods that are materially different than those sold by the trademark owner.'" (quoting *Beltronics USA, Inc. v. Midwest Inventory Distribution, LLC*, 562 F.3d 1067, 1072 (10th Cir. 2009)); *Coty Inc. v. Cosmopolitan Cosmetics Inc.*, 432 F. Supp. 3d 345, 350 (S.D.N.Y. 2020) (explaining that the sale of materially different products is an exception to the first sale doctrine).  Here, in light of the allegations set out in the Complaint, there can be no dispute that this material differences exception applies, and Defendants' reliance upon the first sale doctrine is misplaced.

    a. *SWAROVSKI OPTIK Alleges That Defendants Offer for Sale and Sell Non-Genuine SWAROVSKI OPTIK Products*

SWAROVSKI OPTIK's Complaint centers on Defendants sale of ***non-genuine***, ***materially different*** products. Without question, SWAROVSKI OPTIK alleges:  "the products bearing the SWAROVSKI OPTIK Marks of unknown foreign origin actually sold and delivered to consumers by Defendants are ***materially different*** products not intended for resale in the United States under the SWAROVSKI OPTIK Marks."   Am. Compl., ¶ 42 (emphasis added).   Specifically, SWAROVSKI OPTIK alleges that Defendants' products:  1) "are not covered by the SWAROVSKI OPTIK North American Warranty"; and 2) "have different product packaging and legal disclaimers than SWAROVSKI OPTIK Products sold by SWAROVSKI OPTIK."  *See id.*, ¶¶ 27, 35, 42.  As such, Defendants' products are ***non-genuine***:

> [T]he SWAROVSKI OPTIK products Defendants actually sell and deliver to consumers in the United States are ***non-genuine*** foreign

products of unknown origin which are not manufactured by SWAROVSKI OPTIK.

Am. Compl., ¶ 34 (emphasis added). This is repeated throughout SWAROVSKI OPTIK's Complaint.  Where, as here, SWAROVSKI OPTIK has alleged that Defendants' products are "materially different" from SWAROVSKI OPTIK's products sold under the same marks, Defendants' "goods are considered '**non-genuine**' and the sale of the goods constitutes infringement." *Hotaling & Co., LLC*, 2022 WL 1134851, at *7.  In other words, the first sale doctrine does not apply.

> b. *Defendants' Products are Materially Different Than Genuine SWAROVSKI OPTIK Products*

Defendants contend that "the pleadings identify no material differences between the SWAROVSKI OPTIK products offered for sale by Defendants, and other SWAROVSKI OPTIK products." Motion, at 10 (internal quotation marks and citations omitted).  Given that SWAROVSKI OPTIK's Complaint clearly alleges multiple differences between the products offered for sale and sold by Defendants and SWAROVSKI OPTIK's genuine products—namely, lack of warranty coverage, warning labels, and legal disclaimers—Defendants' Motion, therefore, presumably rests on a challenge that these differences are not "material."  This is incorrect.

"In the context of gray-market goods, in comparing the trademark holder's product with the gray-market product, *we apply a low threshold of materiality, requiring no more than a slight difference which consumers would likely deem relevant when considering a purchase of the product.*" *Zino Davidoff SA v. CVS Corp.*, 571 F.3d 238, 246 (2d Cir. 2009) (emphasis added); *see also Coty*, 432 F. Supp. 3d at 351.  Differences in product packaging, namely, warning labels amounts to a material differences.  *See, e.g.*, *Duracell U.S. Operations, Inc. v. JRS Ventures, Inc.*, C.A. No. 17-CV-3166, 2018 WL 3920617, at *3 (N.D. Ill. Aug. 16, 2018) ("Plaintiff has adequately alleged material differences between the ... batteries[:] ... they are not covered by

plaintiff's ten-year warranty; they are not covered by plaintiff's Customer Guarantee; the packaging does not contain a description of the warranty; ***the packaging lacks warning  labels to ensure the product is used safely***; and the packaging does not contain U.S. customer service information." (emphasis added)); *see also Energizer Brands, LLC v. My Battery Supplier, LLC*, 529 F. Supp. 3d 57, 62 (E.D.N.Y. 2021) (explaining that "plaintiff's pleadings meet [the material differences] threshold," where plaintiff pled "omission of 'safety information, safe handling instructions, and other warnings'"). Moreover, it is well-settled that differences in product packaging, as well as non-physical differences, such as warranty coverage, amount to material differences. *See Dan-Foam A/S v. Brand Named Beds, LLC*, 500 F. Supp. 2d 296, at 314-15 (S.D.N.Y. 2007) (explaining that "[c]ourts have also found that gray goods' lack of warranty protection may constitute a material difference where a trademark owner's authorized goods include warranty protection" and citing cases holding the same); *see also Beltronics*, 562 F.3d at 1072 ("[W]e conclude that the district court did not commit an error of law in concluding that material differences may include the warranties and services associated with Beltronics's radar detectors."); *SKF USA Inc., Int'l Trade Comm'n*, 423 F.3d 1307, 1312 (Fed. Cir. 2005) (holding that "physical material differences are not required to establish trademark infringement… because trademarked goods originating from the trademark owner may have nonphysical characteristics associated with them, including services, such that [the sale of] similar goods lacking those associated characteristics… may mislead the consumer and damage the owner's goodwill"); *Societes Des Produits Nestle*, 982 F.2d at 639 n.7 (explaining that "the appropriate test [for materiality] should not be strictly limited to physical differences," but should include other differences such as "warranty protection or service commitments [that] may well render products non-identical in the relevant Lanham Trade-Mark Act sense"); *Bose Corp. v. Ejaz*, C.A. No. 11-10629-DJC, 2012 WL 4052861, at *9 (D. Mass.

Sept. 13, 2012) (one year difference in warranty between domestic and foreign radio systems constituted material difference); *Fender Musical Instruments Corp. v. Unlimited Music Ctr.*, Inc., C.A. No. 3:93CV2449, 1995 WL 241990, at *3 (D. Conn. Feb. 16, 1995) (foreign Fender guitars not covered by Fender warranty likely to create consumer confusion because they did not come with "services and guarantees that usually accompany such a sale").

Moreover, SWAROVSKI OPTIK alleges that these differences matter to consumers. For example, the Complaint alleges: "[b]y offering products bearing the SWAROVSKI OPTIK Marks to consumers in the United States without a California Proposition 65 disclaimer, Defendants endanger the health and safety of SWAROVSKI OPTIK's consumers, who, therefore, may not be aware of potential health risks." Am. Compl., ¶ 61.  This is sufficient to meet the material differences threshold and exception to the first sale doctrine.  *See Coty*, 432 F. Supp. 3d at 352 (the plaintiff's allegations that their "consumers expect consistent high-quality fragrance products," that "in many instances the removal of the Production Code and resulting mutilation of genuine product packaging degrades the products," and that the differences between the products "are obviously significant to the consuming public" were sufficient to allege "material physical differences" in "packaging"); *Abbott Lab'ys v. Adelphia Supply USA*, C.A. No. 15-CV-5825, 2017 WL 6014330, at *4 (E.D.N.Y. Aug. 14, 2017) ("Even those consumers expecting a 'variation in packaging,' would at the very least find material (and be confused by) packaging" that, among other things, "ommitt[ed] important safety warnings.").

Defendants' reliance upon *TechnoMarine SA v. Jacob Time, Inc.*, 905 F. Supp. 2d 482 (S.D.N.Y. 2012) (hereinafter, "*TechnoMarine*") is misplaced and, once again, undermines Defendants' position.  In *TechnoMarine*, the Court concluded that the plaintiff failed to plead material differences because the complaint did not address "why differences in packaging are

12

material" and did not make plausible allegations of "interference with warranty coverage." *TechnoMarine*, 905 F. Supp. 2d at 491-93.  The Court expressly concluded:  "Plaintiff points out that the watch sold via Jacob Time lacks a genuine TechnoMarine warranty card, but does not allege that the lack of such card would make the watch ineligible for the TechnoMarine warranty." *Id.* at 491.  As discussed above, SWAROVSKI OPTIK specifically alleges *why* the differences in packaging matter to consumers.  And, SWAROVSKI OPTIK's Complaint, unlike *TechnoMarine*, *does* allege that Defendants' SWAROVSKI OPTIK products are ineligible for warranty coverage:

> Pursuant to its terms, the SWAROVSKI OPTIK North American Warranty applies only to SWAROVSKI OPTIK Products "imported by SWAROVSKI OPTIK North America and sold to a consumer by an Authorized U.S. or Canadian SWAROVSKI OPTIK North American Dealer."

> Because the products bearing the SWAROVSKI OPTIK Marks Defendants actually sell and deliver to United States consumers are non-genuine and of unknown foreign origin, *the SWAROVSKI OPTIK products offered for sale and sold by Defendants are not covered—and cannot be covered—by the SWAROVSKI OPTIK North American Warranty*.

> Additionally, because Defendants are not authorized to sell SWAROVSKI OPTIK Products, *the SWAROVSKI OPTIK North American Warranty excludes products sold by Defendants.  The SWAROVSKI OPTIK products offered for sale and sold by Defendants are not covered—and cannot be covered—by the SWAROVSKI OPTIK North American Warranty*.

Am. Compl., ¶¶ 45-47 (emphasis added). Defendants' reliance upon *TechnoMarine*, rather, *confirms* exactly why SWAROVSKI OPTIK's allegations in the Complaint are sufficient to establish material differences in this case.

There can be no dispute that Defendants' products are materially different than genuine SWAROVSKI OPTIK products intended for resale into the United States.  This ends the analysis: the first sale doctrine is inapplicable. *Hotaling & Co., LLC*, 2022 WL 1134851, at *7.

      *c.   Defendants' Attempts to Avoid the Material Differences Exception to the First Sale Doctrine are Factually and Legally Flawed*

Defendants attempt to muddy the first sale doctrine jurisprudence, relying upon an out-of-circuit decision to contend that the material differences exception only applies where "control over the manufacture of goods is alleged to be lacking by the United States trademark owner." Motion, at 7. This contention is not only bellied by the facts alleged in the Complaint but legally incorrect.

As a preliminary matter, SWAROVSKI OPTIK makes clear in its Complaint that it does not know the source of the products offered for sale and sold by Defendants.[3] This, alone, undermines Defendants argument at this stage. Specifically, SWAROVSKI OPTIK alleges: "the SWAROVSKI OPTIK products Defendants actually sell and deliver to consumers in the United States are ***non-genuine foreign*** products of ***unknown origin*** which are ***not manufactured*** by SWAROVSKI OPTIK." Am. Compl., ¶ 34 (emphasis added).[4] This is repeated throughout SWAROVSKI OPTIK's Complaint, yet ignored by Defendants' in their Motion. For example:

- "Specifically, Defendants are offering 'new' SWAROVSKI OPTIK Products designed and intended for resale to North America but fulfilling orders with non-genuine foreign products of ***unknown origin*** which are ***not manufactured*** by SWAROVSKI OPTIK." Am. Compl., ¶ 2 (emphasis added).

- "Defendants are selling ***non-genuine*** products of ***unknown foreign origin*** bearing the SWAROVSKI OPTIK Marks." *Id.* ¶ 24 (emphasis added).

- "SWAROVSKI OPTIK ***does not manufacture*** the products of ***unknown foreign origin*** sold by Defendants which bear the SWAROVSKI OPTIK Marks." *Id.* ¶ 25 (emphasis added).

- "After importing Defendants' ***non-genuine*** products of ***unknown foreign origin*** bearing the SWAROVSKI OPTIK Marks into the United States, Defendants falsely

---

[3] Defendants focus on a singular allegation in the Complaint, where SWAROVSKI OPTIK "refers to the accused products as 'the SWAROVSKI OPTIK products offered for sale by Defendants.'" Motion, at 8 (quoting ECF No. 32, ¶ 55). Based on this, Defendants conclude that the Complaint "permit[s] but one reasonable inference": that the products at issue are "designed, manufactured, and sold" by D. Swarovski KG. *Id.* at 8. ***Not so.*** In so doing, Defendants ignore the fundamental premise of SWAROVSKI OPTIK's Complaint.

[4] Defendants attempt to circumvent or avoid these allegations by claiming that SWAROVSKI OPTIK is "coyly pretending to know nothing about the other entity." Motion, at 9. Such a statement is both argumentative and inappropriate at the motion to dismiss stage, where SWAROVSKI OPTIK's well-pleaded allegations must be taken as true.

advertise the SWAROVSKI OPTIK products they offer for sale and sell on the Internet to United States consumers using the SWAROVSKI OPTIK Marks." *Id.* ¶ 40 (emphasis added).

- "Specifically, Defendants advertise "new" SWAROVSKI OPTIK products designed and intended for resale to North America on the Internet but fulfill orders with their SWAROVSKI OPTIK products of ***unknown foreign origin*** instead." *Id.* ¶ 41 (emphasis added).

SWAROVSKI OPTIK's allegations, which must be taken as true, confirm that the origin and/or source of Defendants' SWAROVSKI OPTIK products is "unknown," and the material differences exception to the first sale doctrine applies for the reasons discussed above.

Moreover, and critically, Defendants' reliance upon *Summit Technology v. High-Line Medical Instruments*, 922 F. Supp. 299, 302 (C.D. Cal. 1996) (hereinafter, "*Summit*"), is misplaced. Defendants point to *Summit* (notably, the only case Defendants rely upon for this proposition) to argue that the material differences exception cannot apply here if Defendants' products were manufactured by the trademark holder. *See* Motion, at 9 ("Because these products were Summit-made, the 'material differences' exception to the 'first sale doctrine' had no application"). Defendants' reading of *Summit* is incorrect. *Summit* did not address a typical gray market dispute, and numerous cases have acknowledged that the reasoning in *Summit* is inapplicable to cases such as this. As explained at length in the subsequent decision of *Ferrero S.p.A v. Imex Leader, Inc.*, C.A. No. 8:17-cv-02152, 2018 WL 11346538 (C.D. Cal. May 8, 2018) (hereinafter, "*Ferrero*"), the defendant's products at issue in *Summit* were advertised as ***used*** products, which were not represented to be new. As the Court in *Summit* acknowledged, "[t]his fact alone distinguishes this case from" a typical gray-goods case. *Summit*, 922 F. Supp. 299 at 310 n.7. Specifically:

> *Summit* distinguished cases like *Shell Oil Co. v. Commercial Petroleum, Inc.*, 928 F.2d 104 (4th Cir. 1991), where the plaintiffs "sued distributors or licensees who purported to sell new goods, but had failed to maintain them to the trademark holder's quality

standards, so that they were no longer 'genuine' goods of the trademark holder." *Id.* at 310 n.7. "By contrast," the court found, "When Summit's systems first enter the marketplace, Summit is assured that the machines are manufactured under Summit quality control standards" and "all the systems at issue are ***used*** products" and are not "represent[ed] ... to be new." *Id.* The court found, "Absent contractual agreement, Summit cannot mandate that subsequent consumers and owners of the laser systems meet Summit quality control standards." *Id.*

*Ferrero*, 2018 WL 11346538, at *14 (emphasis in original).  Distinguishing *Summit*, the *Ferrero*

Court found the first sale doctrine inapplicable when faced with parallel facts to the case at bar:

The present case is more like *[Santa Margherita, S.p.A. v. Weine,* No. 12-03499-DSF-RZ, 2013 WL 12125539 (C.D. Cal. Aug. 28, 2013)]* than *Summit*. The Complaint alleges that: (1) the Ferrero chocolates authorized for distribution in the U.S. and the chocolates sold by Defendants have materially different labels; (2) Defendants fail to match Ferrero's quality control measures by failing to refrigerate products and selling expired chocolates; and (3) there are material differences "in form and composition" between the gray market Ferrero goods and the goods authorized for sale in the U.S. that "create a negative commercial impression among U.S. consumers of a low-quality, substandard, or different product than the KINDER or FERRERO products they expect to find in the" U.S.

*Id.* (internal citations omitted).  As discussed *infra*, the SWAROVSKI OPTIK products of

unknown foreign origin actually sold by Defendants to consumers are materially different products

than those intended for resale into the United States.  SWAROVSKI OPTIK's Complaint falls

squarely within the reasoning of *Ferrero*, ***not*** *Summit*, and the first sale doctrine is inapplicable.

## C. <u>SWAROVSKI OPTIK Has Alleged False Advertising</u>

Next, Defendants take the confounding position that "the Amended Complaint identifies

no advertisement that was false."  Motion, at 13.  This is a perplexing statement given that

SWAROVSKI OPTIK's Complaint spends nearly seven (7) pages explaining ***how*** "Defendants

advertise 'new' SWAROVSKI OPTIK products designed and intended for resale to North

America on the Internet but fulfill orders with their SWAROVSKI OPTIK products of unknown

foreign origin instead." Am. Compl., ¶ 41.  Specifically:

> *By advertising "new" SWAROVSKI OPTIK products to
> consumers in the United States, Defendants falsely represent
> and/or create the false impression that the products are designed
> and intended for resale to North America and are accompanied by
> the corresponding SWAROVSKI OPTIK North American
> Warranty and product packaging*.  However, the products bearing
> the SWAROVSKI OPTIK Marks of unknown foreign origin
> actually sold and delivered to consumers by Defendants are
> materially different products not intended for resale in the United
> States under the SWAROVSKI OPTIK Marks.

Am. Compl., ¶ 42 (emphasis added). False statements under the Lanham Act include those

"conveyed by necessary implication when, considering the advertisement in its entirety, the

audience would recognize the claim as readily as if it had been explicitly stated." *Clorox Co.*

*Puerto Rico v. Proctor & Gamble Com. Co.*, 228 F.3d 24, 35 (1st Cir. 2000); *see also Novartis*

*Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 586-

87 (3d Cir. 2002).[5]

While SWAROVSKI OPTIK alleges multiple examples of false advertising in its

Complaint, the clearest is Defendants' false advertisement of "new" products on Amazon.com.

As alleged, Defendants falsely advertise their SWAROVSKI OPTIK products as "new" on

Amazon.  *See* Am. Compl. ¶ 43.  Amazon's express, publically available Terms and Conditions

require that in order to advertise a product as "new," it must carry the manufacturer's warranty.

*See id.* ¶ 44.  Defendants' SWAROVSKI OPTIK products are *ineligible* for warranty coverage

under SWAROVSKI OPTIK's North American Warranty (*see, e.g., id.* ¶¶ 45-47).  Accordingly:

> Because Defendants' SWAROVSKI OPTIK products are not
> covered by the SWAROVSKI OPTIK North American Warranty,
> the products bearing the SWAROVSKI OPTIK Marks actually sold

---

[5] To the extent Defendants challenge whether their advertisements create such a false impression, this is a question of
fact inappropriate for a motion to dismiss.

> and delivered to purchasing customers by Defendants via amazon.com are not in "new" condition pursuant to Amazon's Terms and Conditions, as advertised.

Am. Compl., ¶ 48.  Defendants' contention that "the Amended Complaint gives the Court no facts from which to conclude that the products Defendants market on Amazon.com are not 'new' under the Amazon guidelines" (Motion, at 13) is simply false.  There can be no doubt that Defendants' advertisement of "new" SWAROVSKI OPTIK products on Amazon.com that are not protected by SWAROVSKI OPTIK's North American Warranty is unambiguously false and amounts to a false advertisement under the Lanham Act.

Certainly, this is not the only example of Defendants' false advertising set forth in the Complaint.  As alleged, Defendants' advertisement of "new" SWAROVSKI OPTIK products on various online commerce cites creates the false impression that those products are 1) designed and intended for resale into North America, 2) protected by the SWAROVSKI OPTIK North American Warranty, and 3) accompanied by the corresponding product packaging.  *See* Am. Compl. ¶ 42. Despite this, in no uncertain terms, SWAROVSKI OPTIK alleges that Defendants' SWAROVSKI OPTIK products 1) are ***not*** designed and intended for resale in the United States (*see, e.g.*, *id*., ¶ 42), 2) are ***ineligible*** for warranty coverage under SWAROVSKI OPTIK's North American Warranty (*see, e.g., id.* ¶¶ 45-47), and 3) are ***lacking*** the proper legal disclaimers and warning information (*see*, *e.g.*, *id.* ¶ 39).  Despite citing to these specific paragraphs of the Complaint in their Motion (*see* Motion, at 13), Defendants ignore the implications of these allegations.  Each of these examples, alone, amounts to a false advertisement, and, when taken together, are surely actionable as a false advertising under the Lanham Act.

Further, once again, Defendants misapply the case law cited in support of their Motion. Defendants contend that *Steeplechase Arts & Prods., L.L.C. v. Wisdom Paths, Inc.*, No.

CV2202031KMMAH, 2023 WL 416080 (D.N.J. Jan. 26, 2023) (hereinafter, "*Steeplechase*"), is dispositive of the issue. ***Not so***. As a preliminary matter, before the Court in *Steeplechase* was a motion for summary judgment, not a motion to dismiss, so the Court did not assess the sufficiency of the allegations in the operative complaint. Moreover, as Defendants concede,[6] the Court explained: "Steeplechase may alternatively attempt to establish that Spiralverse's Amazon ad deceived the buying public, even if it was not 'literally false." *Id.* at *7. Recognizing this, Defendants, without any basis, conclusively state that SWAROVSKI OPTIK has not alleged any "facts capable of raising an inference of actual consumer confusion." Motion, at 14. Once more, Defendants' position disingenuously ignores the allegations in the Complaint. SWAROVSKI OPTIK dedicates an entire section of its Complaint to the discussion of likely ***and actual*** consumer confusion. *See* Am. Compl., ¶¶ 54-65 (explaining that "[t]he harm being caused by Defendants in this case is not theoretical"). While Defendants may challenge whether consumer confusion actually exists in this case, that is inherently a fact question not ripe for a motion to dismiss.

There can be no dispute that SWAROVSKI OPTIK's Complaint alleges Defendants' false advertisements and sets forth a plausible false advertising claim under the Lanham Act.

## D. **SWAROVSKI OPTIK's State Law Claim is Proper**

As a preliminary matter, any contention that SWAROVSKI OPTIK's federal Lanham Act claim is duplicative of its state unfair competition claim, and should fail for this reason alone, is without merit. *See* Motion, at 15 ("Because this state-law claim simply rehashes the false advertising claim by relying on alleged likely consumer confusion, this Court can dismiss the state-law claim upon dismissal of the false advertising claim without further analysis."). Once more,

---

[6] Defendants' discussion of *Steeplechase* confirms this: "the District of New Jersey has found noncompliance with Amazon guidelines insufficient to establish a false advertising claim ***absent evidence of actual confusion***." Motion, at 14 (emphasis added).

Defendants ignore applicable law, *as well as the holdings of the cases cited*, to argue that SWAROVSKI OPTIK's federal Lanham Act claim is duplicative of its state unfair competition claim.  Again, *not so*.  As the cases cited by Defendants recognize, the elements of a Section 43 Lanham Act claim and a state law unfair competition tort claim are different, insofar as the Lanham Act requires an interstate commerce element.  *See SK & F Company v. Premo Pharm. Lab., Inc.,* 625 F.2d 1055, 1065 (3d Cir. 1980).  The cases cited by Defendants *do not* find that such claims are duplicative; to the contrary:

> Since, *except for the interstate commerce requirement*, the elements of the unfair competition torts proscribed by New Jersey law and by section 43(a) of the Lanham Act are the same, we need not repeat the factual discussion as to likelihood of success on the merits of the federal cause of action. The district court could properly find that SKF had a strong likelihood of success on the merits of its Lanham Act claim.

*Id.* at 1066 (emphasis added).  Therefore, the claims are *not* duplicative as Defendants contend.

Alternatively, Defendants' posit that SWAROVSKI OPTIK's state law unfair competition claim fails for the same reasons as its Lanham Act false advertising claim.  As discussed above, Defendants' claims that 1) the Amended Complaint sets forth no false advertisements, or 2) SWAROVSKI OPTIK has alleged no consumer confusion (Motion, at 16), are without merit. For the reasons set forth *supra*, SWAROVSKI OPTIK has set forth a valid claim under N.J.S.A. §§ 56:8-1, et seq.

## CONCLUSION

For the reasons above, Defendants' Motion is without merit and should be denied. However, should the Court be inclined to grant any portion of Defendants' Motion, SWAROVSKI OPTIK respectfully requests leave to amend its Complaint accordingly.

Respectfully submitted,

SWAROVSKI OPTIK NORTH AMERICA
LIMITED

by its attorneys,


 /s/ Dana B. Parker
Dana B. Parker, Esq.
(NJ Attorney ID #: 041682003)
dana.parker@klgates.com
K&L Gates LLP
One Newark Center, 10th Floor
Newark, New Jersey 07102
Tel:  (973) 848-4000
Fax:  (973) 848-4001

Michael R. Murphy, Esq.
(NJ Attorney ID #: 034102007)
michael.r.murphy@klgates.com
Morgan T. Nickerson (*admitted pro hac vice*)
morgan.nickers@klgates.com
Jack S. Brodsky (*admitted pro hac vice*)
jack.brodsky@klgates.com
K&L Gates LLP
One Congress Street, Suite 2900
Boston, MA 02114
Tel:  (617) 261-3100
Fax:  (617) 261-3175

Dated: August 22, 2023

## CERTIFICATE OF SERVICE


     I, Dana B. Parker, certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.


Dated: August 22, 2023         /s/ Dana B. Parker
                                Dana B. Parker